UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANCISCO T., <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 23 CV 1481 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Francisco T. appeals the Commissioner of Social Security's decision denying his application for benefits. For the following reasons, plaintiff's request for remand [16][1] is granted, defendant's motion for summary judgment [22] is denied, and the decision denying the application for benefits is remanded to the agency for further administrative proceedings. 42 U.S.C. § 405(g).

**Background**

On March 1, 2021, plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging a disability onset date of March 1, 2015. [10-1] 13. Plaintiff's claim was denied initially on June 10, 2021, and upon reconsideration on September 20, 2021. [*Id.*] Plaintiff requested a hearing, which was held on March 3, 2022 before an administrative law judge (ALJ). [*Id.*] 13, 37–83. On April 27, 2022, the ALJ issued an unfavorable decision finding plaintiff not disabled from March 1, 2015, the alleged onset date, through March 31, 2021, the date last insured. [*Id.*] 13–31. The Appeals Council denied review on January 11, 2023. [*Id.*] 1.

In the April 27, 2022 decision, the ALJ reviewed plaintiff's disability claim in accordance with the Social Security Administration's five-step, sequential evaluation process. *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023); *Apke v. Saul*, 817 F. App'x 252, 255 (7th Cir. 2020); 20 C.F.R. § 404.1520. At step one, the ALJ found that plaintiff did not engage in substantial gainful activity during the March 1, 2015 through March 31, 2021 period. At step two, the ALJ found that plaintiff has the

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [10], which refer to the page numbers in the bottom right corner of each page.

following severe impairments: degenerative disc disease of the lumbar spine, carpal tunnel syndrome, obesity, depression, generalized anxiety disorder, alcohol abuse, cannabis abuse, attention deficit hyperactivity disorder (ADHD), and posttraumatic stress disorder (PTSD). At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. In assessing the four areas of functioning that make up the paragraph B criteria, the ALJ found that plaintiff has a mild limitation in understanding, remembering, or applying information and moderate limitations in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. Before turning to step four, the ALJ determined that plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following exceptions: he can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, as well as occasionally balance, stoop, kneel, crouch, and crawl. He can bilaterally perform frequent handling, fingering, and feeling. The claimant should avoid work with vibrating tools and work surfaces, and exposure to extreme temperatures. He is able to understand, remember, and carry out simple and detailed work instructions. The claimant is able to sustain the necessary attention and concentration in two-hour increments throughout the day to sustain simple and detailed job duties assuming typical work breaks. He can make simple work-related decisions and he can engage in a routine work environment, as well as deal with occasional changes. The claimant can respond appropriately to supervision, coworkers, and usual work situations, but he should only have occasional, brief, and superficial interactions with the general public, and not be required to work in teamwork or tandem task work. At step four, the ALJ concluded that plaintiff was unable to perform any past relevant work. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff could perform, including mail clerk, gasket inspector, and cleaner-housekeeper. Accordingly, the ALJ found that plaintiff was not under a disability as defined in the Social Security Act from March 1, 2015 through March 31, 2021.

The Appeals Council denied review on January 11, 2023, [10-1] 1, rendering the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.955 & 404.981; *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021). Plaintiff timely appealed to this Court [1], and the Court has subject-matter jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).[2]

## Legal Standard

The Court reviews the ALJ's decision deferentially to "ensur[e] that substantial evidence supported the ALJ's decision and that the ALJ applied the correct legal standards." *Morales v. O'Malley*, 103 F.4th 469, 472 (7th Cir. 2024)

---

[2] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge [7].

(citing *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018)). Substantial evidence is "not a high threshold: it means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). "A reviewing court 'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (alteration in original) (quoting *Gedatus*, 994 F.3d at 900). Furthermore, the Court "will only overturn the ALJ's credibility determination if it is patently wrong, which means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citation omitted). But where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Dallas H. v. O'Malley*, No. 22 C 50432, 2024 WL 1158378, at *3 (N.D. Ill. Mar. 18, 2024) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

## Discussion

Plaintiff argues that the ALJ erred in two ways: (1) her assessment of plaintiff's mental residual functional capacity (RFC) and (2) her evaluation of plaintiff's subjective symptoms. [16] 3–15. The Court begins with plaintiff's challenges to the ALJ's credibility determination.

"[A]n ALJ may not discount a claimant's symptom statements 'solely because they are not substantiated by objective evidence.'" *House v. Berryhill*, No. 17 C 3936, 2018 WL 3022678, at *3 (N.D. Ill. June 18, 2018) (quoting SSR 16-3p). "Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," 20 C.F.R. § 404.1529(c)(3), "Social Security Ruling 16-3p explains [other] factors to consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms." *Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022) (citing 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. § 404.1529). These factors include daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate symptoms; and treatment, other than medication, that an individual receives or has received. SSR 16-3p, 2017 WL 5180304, at *7–8; 20 C.F.R. § 404.1529(c)(3). The regulations mandate that an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10. In other words, although the Court's review is deferential, "an ALJ still must competently explain an adverse-credibility finding with specific reasons 'supported by the record[.]'" *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015).

It is difficult for the Court to review the ALJ's credibility determination because the decision does not separate this specific assessment from its summary and discussion of the record evidence. The ALJ first thoroughly summarized plaintiff's testimony. [10-1] 22–23. The ALJ then stated that "[a]s for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because the evidence does not support the full extent of the alleged loss of functioning" but then concluded that "[n]evertheless, the record certainly reflects a combination of impairments significantly affecting the claimant's ability to engage in basic work activities when considering his abilities on a regular and continuing basis, meaning 40 hours per week." [*Id.*] 24. From there, the ALJ's decision provided a summary of the record evidence. [*Id.*] 24–28. At the end of this summary, as relevant to plaintiff's arguments, the ALJ provided her conclusion on plaintiff's mental impairments and the resulting RFC limitations:

> Mentally, the claimant is limited to a range of unskilled and semiskilled tasks, but not complex tasks. The claimant has treated for depression and anxiety throughout the period under consideration, with periods of greater stability or improvement than others, although there were a substantial number of medication changes and adjustments. However, despite the ongoing signs and symptoms throughout the period under consideration, the claimant was generally able to manage his functions and be a stay-at-home dad. Nonetheless, there are indications of reduced motivation and difficulties overlapping with physical impairments, as well as indications of frustration tolerance difficulties. Thus, the claimant is limited to no complex tasks, although the record reflects that the claimant could sustain up to detailed tasks on a regular and continuing basis. Moreover, the claimant would have the limited public contact as indicated above, as he demonstrated, and the record supports, certain difficulties with situations regarding others.

[*Id.*] 28–29.

The ALJ's decision consistently fails to sufficiently explain the ALJ's reasoning and instead primarily amounts to a recitation of the record evidence and plaintiff's testimony. "[A] summary is not a substitute for analysis." *Charlnette R. v. Dudek*, No. 23-cv-03184, 2025 WL 933840, at *5 (N.D. Ill. Mar. 27, 2025) (quoting *Craig R. v. O'Malley*, No. 23 C 50035, 2024 WL 1363664, at *3 (N.D. Ill. Mar. 29, 2024)). *See Rebecca M. B. v. Kijakazi*, No. 22 C 41, 2023 WL 3168894, at *4 (N.D. Ill. Apr. 28, 2023) (noting that although "ALJs need only minimally articulate their analysis, it does not mean that ALJs can recite the cold medical record upfront, and then make conclusions without analysis later in the opinion"); *Shirley A. J. v. O'Malley*, No. 23-cv-113, 2024 WL 1341077, at *5 (N.D. Ind. Mar. 29, 2024) ("Listing or cataloging evidence from the record is not a substitute for analysis or explanation."). For example, plaintiff argues that the ALJ failed to analyze his daily activities, instead

4

merely summarizing them in her assessment of the paragraph B criteria and then repeating plaintiff's testimony. [16] 12–13 (citing [10-1] 19–20, 21–22). "[I]n assessing a claimant's alleged symptoms, an ALJ 'is required to evaluate a claimant's activities of daily living and explain why the claimant's activities are inconsistent with her description of her symptoms.'" *Danny T. v. O'Malley*, No. 23 C 15008, 2024 WL 4170207, at *3 (N.D. Ill. Sept. 12, 2024) (quoting *Michelle M. L. v. Kijakazi*, No. 20 C 6793, 2022 WL 3297619, at *11 (N.D. Ill. Aug. 11, 2022)). *See* SSR 16-3p; 20 C.F.R. § 404.1529(c)(3)(i); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("ALJs must explain perceived inconsistencies between a claimant's activities and the medical evidence."). Although the ALJ acknowledged plaintiff's testimony at the hearing and statements made in plaintiff's function report, the only real conclusion the ALJ drew from these observations was that plaintiff "was generally able to manage his functions and be a stay-at-home dad." [10-1] 28. The ALJ's decision did not include any analysis or explanation as to why the ALJ concluded that these activities and abilities outweighed or were inconsistent with plaintiff's other testimony as to his difficulties and functioning.

Defendant disagrees, arguing that the ALJ properly concluded that "despite the fact that plaintiff's symptoms fluctuated during the relevant period," plaintiff "always remained able to care for his two young children as a stay-at-home dad." [23] 7. Defendant asserts that "[w]hatever plaintiff's symptoms were during the relevant period, they did not prevent him from maintaining childcare duties." [*Id.*] The ALJ's decision repeatedly observed that plaintiff has reported being a stay-at-home dad throughout the record evidence, including a progress note from September 30, 2019 noting that plaintiff had been a stay-at-home father for the past four to five years. *See* [10-1] 18, 24, 25, 26 (citing [*id.*] 490). However, there are two problems with the ALJ's significant reliance on this as an indicator of plaintiff's abilities.

First, "[t]he ability to care for children does not equate to the ability to work full-time outside the home." *Spaulding v. Astrue*, No. 11 C 2926, 2012 WL 3308881, at *4 (N.D. Ill. Aug. 13, 2012) (citing *Gentle v. Barnhart*, 430 F.3d 865, 867–68 (7th Cir. 2005)). The Seventh Circuit has specifically warned against reliance on childcare, finding that an ALJ's "casual equating of household work to work in the labor market cannot stand" and that "taking care of an infant, although demanding, has a degree of flexibility that work in the workplace does not." *Gentle*, 430 F.3d at 867. *See also Forsythe v. Colvin*, 813 F.3d 677, 680 (7th Cir. 2016) ("At home one has much greater flexibility about when and how hard and how continuously to work . . . and sheer necessity may compel one to perform tasks at home no matter how painful, such as taking care of one's child."); *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014) (stating the court has "urged caution in equating these activities with the challenges of daily employment in a competitive environment, especially when the claimant is caring for a family member"); *Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010) (noting that the *Gentle* court held that "an ability to work full time could not be inferred" from babysitting); *Senora W. v. O'Malley*, No. 21 CV 4411, 2024 WL

5

4346613, at *12 (N.D. Ill. Sept. 30, 2024); *Timothy M. v. Kijakazi*, No. 21-cv-697, 2022 WL 17101811, at *3 (N.D. Ind. Nov. 22, 2022) ("The ALJ is not permitted to find that Plaintiff's subjective symptoms are exaggerated based on an ability to care for family members, as a claimant may be required to care for family members out of necessity despite suffering from symptoms due to his impairments.").

Second, the ALJ's reliance on plaintiff's ability to be a stay-at-home dad overlooks several important qualifications and the Court is not convinced that the record reflects the level of childcare the ALJ suggests plaintiff provides. In his function report, plaintiff indicated that he wakes up the kids for school, makes them breakfast and lunch, occasionally makes dinner, and puts them to bed. [10-1] 229. Plaintiff acknowledged that he "need[s] multiple alarms to remind [him] when kids leave and get home." [*Id.*] Plaintiff's hearing testimony also mentioned picking his kids up from school. [*Id.*] 62. However, as plaintiff's brief points out, this task is not always done without difficulty and at the hearing, plaintiff recalled incidents where he has become aggressive or gotten into arguments in the school parking lot. [*Id.*] 23, 62–63. The limitations on plaintiff's abilities and involvement in being a stay-at-home dad become even more apparent when considered in connection with the third party function report completed by plaintiff's wife. *See* [10-1] 254–62 ("Even though he wasn't working, he couldn't handle taking care of a 4 and 6 year old."; "Last Spring when our two children were at home with E-learning, he didn't help with anything. He slept."). Plaintiff argues that the ALJ failed to evaluate this third party function report and that the ALJ erred by summarizing some of the statements from plaintiff's wife without analyzing whether they were consistent with the record or how these statements were incorporated into the ALJ's symptom evaluation. [16] 14. The Court agrees.

The regulations acknowledge that non-medical sources such as family and friends "may provide information from which [ALJs] may draw inferences and conclusions about an individual's statements that would be helpful . . . in assessing the intensity, persistence, and limiting effects of symptoms." SSR 16-3p, 2017 WL 5180304, at *7. When evaluating the weight to assign a third party function report, SSR 16-3p states that the ALJ "will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." *Id.* The regulations also provide that the evidence used to assess a claimant's RFC will include consideration of "descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms . . . provided by you, your family, neighbors, friends, or other persons." 20 C.F.R. § 404.1545(a)(3).[3] "An ALJ does not necessarily err by not explicitly addressing third-

---

[3] "Moreover, an ALJ cannot discredit a third party's statement solely because of the third party's relationship, which may implicate bias with the claimant." *William B. v. Comm'r of Soc. Sec.*, No. 22-cv-2652, 2024 WL 4234689, at *10 (S.D. Ill. Sept. 19, 2024) (citing *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013)).

6

party reports if the statements are merely corroborative or duplicative of a plaintiff's claims and the ALJ does not overlook the lines of evidence that they represent." *Darius B. v. O'Malley*, No. 23 C 3699, 2024 WL 1214571, at *5 (N.D. Ill. Mar. 21, 2024) (collecting cases). *See also Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 354 (7th Cir. 2005) (referring to an earlier case in which the Seventh Circuit "held that the ALJ was not required to discuss the claimant's wife's testimony if the claimant's testimony and the two were essentially the same"); *Chad R. v. Saul*, No. 19-cv-4999, 2020 WL 4344926, at *6–7 (S.D. Ind. July 29, 2020).

Here, aside from acknowledging a statement that plaintiff uses braces/splints on his wrists, the ALJ's decision only mentioned the third party function report from plaintiff's wife in analyzing the paragraph B criteria.[4] Otherwise, the ALJ did not articulate consideration of the third party function report in assessing plaintiff's RFC or in evaluating plaintiff's subjective symptoms. Notably, the ALJ's decision failed to acknowledge that plaintiff, his wife, and his children have lived with plaintiff's father-in-law for the entire relevant period. *See* [10-1] 707, 721, 734 (treatment records indicating that plaintiff has lived with his father-in-law since 2014), 255 (wife's May 2021 statement that she and plaintiff live with her father), 573 (August 2018 treatment records noting that plaintiff lives with his in-laws and his father-in-law is retired). Plaintiff's function report included that he receives help from his wife and father-in-law, noting that they do laundry, cook, clean, pay bills, shop, and manage money. [10-1] 230. But the third party function report completed by plaintiff's wife included greater detail suggesting that plaintiff receives significant help in being a "stay-at-home dad." Plaintiff's wife stated that her father "is retired" and "helps the kids with homework, prepares meals, and most housework." [*Id.*] 255. She stated that if her dad "wasn't at home with the kids, [she] would worry about them" and that although plaintiff watches her brother's children because plaintiff is at home when they get home, "he makes sure they are alive, but that's it." [*Id.*] *See also* [*id.*] 49–50 (ALJ asking about whether plaintiff was paid to watch other family members' kids and plaintiff stating that he just "was a body to watch the kids"), 510 (June 2019 treatment note reporting that plaintiff is "watching the kids – a lot of work – nieces and nephews too"). According to plaintiff's wife, plaintiff's ability to help "can change monthly" and she "hardly give[s] him tasks because it's more work for [her] to make

---

[4] An ALJ's decision must be read as a whole and the Seventh Circuit has emphasized that courts will "not discount [information] simply because it appears elsewhere in the decision." *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015). "To require the ALJ to repeat such a discussion throughout h[er] decision would be redundant." *Id.* However, steps three and four in the SSA's framework are distinct and separate. The ALJ specifically acknowledged that "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process" and that "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning." [10-1] 21. Yet the ALJ's decision did not return to an analysis of plaintiff's activities or the third party function report in evaluating plaintiff's subjective symptoms and making an RFC assessment. Regardless, even in acknowledging certain portions of the third party function report, the ALJ's decision merely summarized these statements rather than provide any analysis and ignored certain lines of evidence contained in the report.

7

sure he does them." [*Id.*] 254–55. Plaintiff's wife explained that even with multiple forms of alerts and reminders, plaintiff "still forgets things and people," including "basic everyday things like taking [the] children to school or picking them up." [*Id.*] 254. *See, e.g.*, [*id.*] 254 ("I have our children ride the bus since he's not reliable."), 262 ("When we first moved in with my father in the summer of 2014 I kept my kids in daycare and before and after school care, because I couldn't trust that my husband would be able to take care of them or remember to get them from school."), 262 ("I've gotten home and neither my husband or father was at the house because my husband left the house without realizing or remembering my father had left to go somewhere."), 262 (referring to plaintiff as "forgetting to pick up his daughter from school 3 times"). Plaintiff's wife also indicated that the kids themselves help out around the house. *See, e.g.*, [*id.*] 257 ("My 13 year old son helps with groceries and yardwork, moving the lawn. My 10 year old daughter helps with other things too."), 262 ("Lots of days, he was asleep still when I called. The kids were already awake and had fed themselves."). Given that this additional information is not included in plaintiff's function report or testimony, without any analysis or explanation of the third party function report or plaintiff's activities, it is difficult for the Court to see how the ALJ placed significant reliance on plaintiff's ability to "be a stay-at-home dad." [*Id.*] 28.

The information summarized herein comprises a line of evidence that the ALJ overlooked by failing to properly evaluate plaintiff's wife's third party function report.[5] ALJs "are subject to only the most minimal of articulation requirements" and need not address every piece of evidence in the record. *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). But "an ALJ may not ignore an entire line of evidence contrary to its ruling." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) (citing *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020)). *See A.H. ex rel. Williams v. Astrue*, No. 09 C 6981, 2011 WL 1935830, at *18 (N.D. Ill. May 18, 2011) (stating that an "ALJ's failure to consider an entire line of evidence falls below the minimal level of articulation required") (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)). Accordingly, remand is required. *See, e.g., Timothy M.*, 2022 WL 17101811, at *4 ("The ALJ failed to consider his wife's third-party function report in analyzing Plaintiff's subjective symptoms, and this is in error."); *Ian R. v. Kijakazi*, No. 21-cv-

---

[5] The Court notes that these identified portions of the third party function report are not the only important statements and some of the information contained in that report is relevant to other arguments raised in plaintiff's brief. For example, although plaintiff's function report did not list his medications and stated that he has no side effects, [10-1] 236, plaintiff's wife's report stated that plaintiff's "antidepressants make him tired or the uppers keep him agitated and then he can't sleep," as well as listed the specific medications plaintiff is on and their side effects (tiredness or overstimulation, can't concentrate). [*Id.*] 255, 261. The third party function report also contains additional evidence pertaining to plaintiff's abilities in concentrating, focusing, and remembering. As the Court is already remanding this case, it need not go into a detailed discussion of these other points. However, the Court encourages the ALJ to thoroughly consider all statements contained in the third party function report and explain the weight given to this report in evaluating plaintiff's subjective symptoms and assessing plaintiff's RFC.

898, 2022 WL 2527324, at *4 (N.D. Ind. July 7, 2022) ("Although the ALJ mentions the report . . . there is no discussion of the report and whether the ALJ found it to be consistent with the other evidence in the record. Thus, on remand the ALJ must give full consideration to the third party report and explain what weight it is given.").

The Court cannot find that any error in the ALJ's credibility determination and consideration of the third party function report is harmless. "An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding." *Engstrand*, 788 F.3d at 660 (quoting *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014)). *See also Allord v. Barnhart*, 455 F.3d 818, 821–22 (7th Cir. 2006) (identifying these as the two conditions in which an error in the credibility determination can be harmless); *Darlene M. v. Kijakazi*, No. 19 CV 6389, 2021 WL 3773291, at *4 (N.D. Ill. Aug. 25, 2021). Neither of these two circumstances applies to the present case. And given the ALJ's reliance on plaintiff's ability to be a stay-at-home father, the Court cannot "predict with great confidence" what effect the ALJ's evaluation of the third party function report completed by plaintiff's wife might have on the ALJ's assessment of plaintiff's subjective symptoms, limitations, and RFC determination as a whole. *Wilder*, 22 F.4th at 654. Furthermore, defendant does not argue that any error in the ALJ's evaluation is harmless and such an argument is therefore forfeited. *James M. v. Kijakazi*, No. 20 CV 2082, 2023 WL 3652862, at *7 n.6 (N.D. Ill. May 25, 2023); *Arej v. Sessions*, 852 F.3d 665, 669 (7th Cir. 2017) ("The government has not raised harmless error here, so that argument is waived.") (Sykes, J. concurring).

Because the Court is remanding on this basis, it does not address plaintiff's other arguments. However, this should not be construed as a finding that the ALJ did or did not err in the other ways identified by plaintiff.

## Conclusion

For the foregoing reasons, plaintiff's request for remand [16] is granted, the decision of the SSA is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with the Court's ruling.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: August 12, 2025**